UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **TAYLOR B. THEUNISSEN,** | **CIVIL ACTION** |
| **MD, LLC, ET AL.,** | |
| **Plaintiffs** | |
| | |
| **VERSUS** | **NO. 22-2820** |
| | |
| **UNITED HEALTHCARE** | **SECTION: "E" (2)** |
| **OF LOUISIANA, INC., ET AL.,** | |
| **Defendants** | |

## ORDER AND REASONS

Before the Court is Defendant United Healthcare Insurance Company's ("UHC" or "Defendant") Second Motion to Dismiss ("Motion").[1] The Court has reviewed the Motion,[2] the opposition filed by Taylor B. Theunissen, MD, LLC ("TBT") and Sadeghi Center for Plastic Surgery, LLC ("Sadeghi") (collectively "Plaintiffs"),[3] UHC's reply,[4] the record, and the law, and now issues this Order and Reasons **GRANTING** Defendant's Motion.

## BACKGROUND[5]

"This case is a claim for benefits due . . . based upon adverse benefit determinations for services rendered" by Plaintiffs.[6] At all relevant times, Patient N.T. was a beneficiary of an Employee Health Benefit Plan ("Plan") sponsored by Bechtel Global Corporation and administered by UHC.[7] The Plan is governed by the Employee

---

[1] R. Doc. 20. Defendant filed its First Motion to Dismiss on October 21, 2022. R. Doc. 9. On November 9, 2022, the Court granted Plaintiffs leave to file a first amended complaint. R. Doc. 11. On November 14, 2022, Plaintiffs filed a first amended complaint. R. Doc. 12. Accordingly, the Court denied Defendant's First Motion to Dismiss as moot on November 17, 2022. R. Doc. 15.

[2] R. Doc. 20.

[3] R. Doc. 25.

[4] R. Doc. 29.

[5] The following facts are taken from Plaintiff's first amended complaint. R. Doc. 12.

[6] R. Doc. 12 at p. 2, ¶ 2.

[7] *Id.* at p. 1, ¶ 1. "Because of confidentiality concerns, Plaintiff Providers' patient is identified solely by her

Retirement Income Security Act of 1974 ("ERISA").[8] Patient N.T. was diagnosed with left breast cancer and underwent a mastectomy and breast reconstruction.[9] On March 23, 2018, Dr. Taylor Theunissen (of Plaintiff Taylor B. Theunissen, MD, LLC)[10] and Dr. Alireza Sadeghi (of Plaintiff Sadeghi Center for Plastic Surgery, LLC),[11] working as co-surgeons, performed a bilateral breast reconstruction with deep inferior epigastric perforator flaps ("first reconstruction procedure") on N.T.[12] In hiring Plaintiffs, N.T. executed a document entitled "Assignment of Benefits/Designated Authorized Representative," which assigned "to the fullest extent permitted by law and all benefit and non-benefit rights (including the right to any payments) under" the Policy to Plaintiffs.[13] Dr. Sadeghi is a double board certified plastic surgeon and reconstructive surgeon who specializes in reconstructive breast surgery for women who have dealt with breast cancer in the past.[14] Dr. Theunissen is a board certified plastic surgeon with extensive breast reconstruction experience.[15]

On March 5, 2018, weeks prior to the first reconstruction procedure, Dr. Theunissen submitted to UHC a pre-authorization request for Patient N.T.'s first reconstruction procedure, citing to multiple medical codes: S2068, 19380, 19364, 21600, 15002, 15777, 64910, and 64488.[16] During a status conference with the Court on March 30, 2023, the parties confirmed Plaintiffs were out-of-network providers under the Plan and that the Plan required Plaintiffs to seek prior authorization for the

---

[8] initials." *Id.* at p. 1 n.1.
[8] *Id.* at p. 2, ¶ 7.
[9] *Id.* at p. 4, ¶ 14. Plaintiffs do not allege when Patient N.T. was diagnosed with breast cancer.
[10] *Id.* at p. 2, ¶ 5 n.2.
[11] *Id.*
[12] *Id.* at p. 4, ¶ 15.
[13] *Id.* at p. 3, ¶ 10.
[14] *Id.* at p. 5, ¶ 18.
[15] *Id.* at p. 5, ¶ 19.
[16] *Id.* at p. 6, ¶ 20.

reconstruction procedures.[17] The March 5, 2018 pre-authorization request submitted to UHC explicitly stated two surgeons, Dr. Sadeghi and Dr. Theunissen, would be performing the first reconstruction procedure.[18] On March 9, 2018, UHC sent a letter ("First Pre-Authorization and Medical Necessity Letter") to Patient N.T.,[19] copying Dr. Theunissen, stating "we have determined that the treatment is medically necessary."[20] The First Pre-Authorization and Medical Necessity Letter further states "[t]his approval does not guarantee that the plan will pay for the service" as, *inter alia*, "[p]ayment of covered services depends on other plan rules," "plan benefit language[, and] eligibility."[21] The First Pre-Authorization and Medical Necessity Letter references the following procedure codes pertaining to the first reconstruction procedure: 15002, 15777, 19364, 19380, 21600, 64488, 64910, and S2068.[22] With the First Pre-Authorization and Medical Necessity Letter in hand, Plaintiffs proceeded with the first reconstruction procedure.[23]

Following the first reconstruction procedure, Sadeghi submitted a claim to UHC in the amount of $130,000 for the services rendered, under procedure codes S2068-RT-

---

[17] R. Doc. 36 at p. 2.

[18] R. Doc. 12 at p. 6, ¶ 20.

[19] R. Doc. 20-5. During a status conference with the parties on March 30, 2023, Defendant confirmed the R. Doc. 20-5 was addressed only to Patient N.T. *See* R. Doc. 36 at p. 2.

[20] R. Doc. 20-5 at p. 1. The United States Court of Appeals for the Fifth Circuit has instructed, "when considering a Rule 12(b)(6) motion, a court may consider documents outside the complaint when they are: (1) attached to the motion; (2) referenced in the complaint; and (3) central to the plaintiff's claims." *Maloney Gaming Mgmt. v. St. Tammany Parish*, 456 Fed.Appx. 336, 340 (5th Cir. 2011). Attached to UHC's Motion to Dismiss is the Policy and three pre-authorization communications between Patient N.T. and UHC. R. Docs. 20-5, 20-6, 20-7, and 20-4. Mabel S. Fairley, a UHC legal specialist, declares under penalty of perjury that the Policy and pre-authorization communications attached to UHC's Motion are true and correct. R. Doc. 20-8. The Policy and pre-authorization communications are referenced in Plaintiffs' first amended complaint and central to the claims they assert. R. Doc. 12. Accordingly, the Court may appropriately consider the Policy and pre-authorization communications even though they fall outside of the four-corners of the first amended complaint.

[21] R. Doc. 20-5 at p. 2. Notably, medical necessity is but one required element for a service to constitute a "covered health service" under the Plan. *See* R. Doc. 20-4 at p. 125 (providing that a covered health service is one that UHC determines is (1) medically necessary; (2) described as a covered health service in the Policy; (3) provided to a "covered person;" and (4) not otherwise excluded under the Policy).

[22] R. Doc. 20-5 at p. 1.

[23] R. Doc. 12 at p. 7, ¶ 29.

62 and S2068-LT-62.[24] Thereafter, UHC rejected Sadeghi's claim "based, at least in part, on the rejection of [procedure code] S2068" and "the clear terms of the Plan."[25] UHC paid Sadeghi nothing.[26] Similarly, TBT, following the first reconstruction procedure, submitted a claim to UHC in the amount of $125,000 for the services rendered, under unknown procedure codes.[27] UHC paid TBT only $1,000.[28]

After the first reconstruction procedure, a "revision of the breast reconstruction was required" and, as a result, another surgery was scheduled for August 6, 2018 ("second reconstruction procedure").[29] In a letter dated July 31, 2018 and addressed to Patient N.T. ("Second Pre-Authorization Letter"), UHC determined the second reconstruction procedure was "eligible for Outpatient Facility coverage," but cautioned that the Plan "may have limits on . . . services . . . cover[ed]" and "[t]his approval does not guarantee that the plan will pay for the service" because, for example, "[p]ayment of covered services depends on other plan rules."[30] With respect to the second reconstruction procedure, UHC stated in correspondence as follows:

> During adjudication of out-of-network claims, our system refers to the FH Benchmark databased and automatically applies the amount reported at the plan's selected percentile for your geographic area (called the "geozip") *for eligible claims*. Your plan has chosen to use the 95%th percentile.[31]

With the Second Pre-Authorization Letter in hand, Plaintiffs proceeded with the second reconstruction procedure.[32] Following the second procedure, Plaintiffs submitted claims

---

[24] *Id.* at p. 8, ¶¶ 30-32.
[25] *Id.* at. P. 8 ¶¶ 33, 36.
[26] *Id.* at p. 8, ¶ 36.
[27] *Id.* at p. 8, ¶ 37. Plaintiffs do not allege under which procedure codes TBT billed UHC.
[28] *Id.* at p. 9, ¶ 38.
[29] *Id.* at p. 9, ¶ 40.
[30] R. Doc. 20-6 at pp. 1-2. During a status conference with the parties on March 30, 2023, Defendant confirmed the R. Doc. 20-6 was addressed only to Patient N.T. *See* R. Doc. 36 at p. 2.
[31] R. Doc. 12 at p. 9, ¶ 42 (emphasis added).
[32] *Id.* at p. 9, ¶ 39.

to UHC, which UHC "failed to pay."[33]

In early 2020, "it was determined that N.T. required a third surgery . . . to address complications from the prior breast reconstruction procedures."[34] The third surgery was scheduled for February 17, 2020 ("third reconstruction procedure").[35] On January 24, 2020, Dr. Theunissen requested authorization from UHC to undertake the third reconstruction procedure.[36] In a letter to Patient N.T. dated February 10, 2020, UHC determined the third reconstruction procedure was eligible for coverage under the Plan ("Third Pre-Authorization Letter").[37] Like the first and second pre-authorization letters, this Letter stated "[t]his approval does not guarantee that the plan will pay for the service" because, *inter alia*, "[p]ayment of covered services depends on other plan rules."[38] The substance of the Third Pre-Authorization Letter "was further confirmed via a telephone call from Dr. Theunissen's office."[39] With the Third Pre-Authorization Letter in hand, Dr. Theunissen undertook the third reconstruction procedure.[40] TBT then submitted a claim to UHC in the amount of $60,000,[41] which was rejected.[42]

In response to UHC's denial of the claims as submitted by Sadeghi and TBT for the first, second, and third reconstruction procedures, Plaintiffs, as assignees of Patient

---

[33] *Id.* at p. 9, ¶ 42. Plaintiffs allege a partial payment was made to TBT. *Id.* at p. 9, ¶ 43. Plaintiffs do not allege whether a partial payment was made to Sadeghi.

[34] *Id.* at p. 9, ¶ 45.

[35] *Id.*

[36] *Id.* at p. 9, ¶ 46.

[37] R. Doc. 20-7 at p. 1.

[38] *Id.* at p. 2.

[39] R. Doc. 12 at p. 10, ¶ 47.

[40] *Id.* at p. 10, ¶ 48.

[41] *Id.*

[42] *Id.* at p. 10, ¶ 49. Connected to the third reconstruction procedure, Plaintiffs further allege UHC referred the denied claim to its contractor, who made an offer on behalf of UHC that TBT then accepted, which UHC allegedly reneged on. *See id.* at pp. 10-11, ¶¶ 50-56. The Court does not explore those factual allegations here because they form the basis of a separate breach of contract claim, which is not before the Court. *See* R. Doc. 36 (clarifying "Plaintiffs are bringing two separate breach of contract claims" and UHC's Motion to Dismiss is only with respect to the breach of contract claim and the detrimental reliance claim related to "pre-authorization communications").

N.T., submitted both first and second level member appeals to UHC ("member appeals").[43] UHC denied the appeals.[44] Plaintiffs allege the ERISA administrative exhaustion requirement has been met.[45] Plaintiffs allege UHC's refusals to "make sufficient payment for N.T.'s claims under the term (sic) of the Plan are 'adverse benefit determinations' under ERISA."[46]

Accordingly, Plaintiffs initiated the instant lawsuit on August 23, 2022.[47] Plaintiffs bring four claims against UHC in their first amended complaint: (1) an ERISA claim as N.T.'s assignee; (2) two claims for breach of contract under Louisiana law; and (3) a claim for detrimental reliance under Louisiana law. "The Louisiana state law claims asserted . . . are brought by the Plaintiff Providers in their individual capacity and not under the assignment of benefits from N.T."[48] The ERISA claim has been stayed.[49] UHC moves only to dismiss one of Plaintiffs' state law claims of breach of contract and Plaintiffs' detrimental reliance claim, both of which are based on UHC's preauthorization communications, on grounds of ERISA preemption.[50]

With respect to the relevant state law breach of contract claim, Plaintiffs allege the First Pre-Authorization and Medical Necessity Letter, the Second Pre-Authorization Letter, and the Third Pre-Authorization Letter (collectively the "Letters") amount to a contract between UHC and Plaintiffs, under which UHC agreed the reconstruction

---

[43] R. Doc. 12 at p. 11, ¶ 58.
[44] Id. at p. 12, ¶ 61.
[45] Id. at p. 12, ¶ 63.UHC does not contest this point for purposes of this Motion. See R. Doc. 20.
[46] R. Doc. 12 at p. 12, ¶ 62.
[47] R. Doc. 1.
[48] R. Doc. 12 at p. 4, ¶ 12.
[49] R. Doc. 17 at p. 2 ("WHEREAS, the Parties stipulate and agree that Plaintiffs' ERISA claim . . . should be stayed . . . until such time as the District of New Jersey resolves the question of whether a class should be certified in the *Tamburrino* case.").
[50] R. Doc. 20. Thus, UHC does not move to dismiss Plaintiffs' ERISA claim or state law "breach of contract claim on the basis of the 'MARS Negotiated Resolution.'" R. Doc. 36 at p. 2 (citing R. Doc. 12 at p. 10, ¶¶ 51-53).

procedures were both eligible under the Policy and medically necessary.[51] Tracking the language of the Policy,[52] Plaintiffs allege that, by way of the Letters, UHC agreed to pay Plaintiffs the customary and reasonable compensation for the reconstruction procedures—a non-specific dollar amount.[53] Plaintiffs allege UHC breached the "agreement" by refusing to pay the reasonable and customary fee for the reconstruction procedures.[54] As a result of that breach, the Plaintiff Providers incurred "damages in an amount to be shown at the trial of this matter."[55]

With respect to the state law detrimental reliance claim, Plaintiffs allege UHC, "[t]hrough its conduct and/or work, including but not limited to the representation stated in the [] Letters, . . . represented to the [Plaintiffs] that the [r]econtruction [p]rocedures were both eligible [under the Policy] and medically necessary, that the [Plaintiffs] were authorized to undertake the [r]econtruction [p]rocedures and that [UHC] would pay the reasonable and customary fees for the [r]econtruction [p]rocedures."[56] Plaintiffs allege they "justifiably relied on those representations by" UHC[57] and "changed their position to their detriment based on said representations by, *inter alia*, undertaking the" reconstruction procedures for Patient N.T.[58] As a result, Plaintiffs "have incurred damages in [an] amount to be proven at the trial of this matter."[59]

For purposes of this Motion, UHC does not attack the legal sufficiency of

---

[51] R. Doc. 12 at p. 13, ¶¶ 67-72.
[52] *See, e.g.*, R. Doc. 20-4 at p. 70 ("When the provider is a non-Network provider for the primary plan . . . , the allowable expense is the reasonable and customary charges allowed by the primary plan.").
[53] R. Doc. 12 at p. 13, ¶ 70.
[54] *Id.* at p. 13, ¶ 72.
[55] *Id.* at p. 14, ¶ 74.
[56] *Id.* at p. 14, ¶ 77.
[57] *Id.* at p. 14, ¶ 78.
[58] *Id.* at p. 14, ¶ 79.
[59] *Id.* at p. 15, ¶ 80.

Plaintiffs' allegations to support state law causes of action for breach of contract and detrimental reliance.[60] Instead, UHC argues the state law claims of breach of contract and detrimental reliance based on the Letters must be dismissed because they are preempted by ERISA.[61] Plaintiffs oppose.[62]

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court may dismiss a complaint, or any part of it, for failure to state a claim upon which relief may be granted if the plaintiff has not set forth factual allegations in support of his claim that would entitle him to relief.[63]  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[64] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[65] However, the court does not accept as true legal conclusions or mere conclusory statements,[66] and "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[67] "[T]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements" or "naked assertion[s] devoid of further factual enhancement" are not

---

[60] R. Doc. 20.

[61] R. Doc. 20-1 at p. 4 (preliminary statement). For clarity, when the Court refers to Plaintiffs' state law breach of contract and detrimental reliance claims, it is only referring to those claims based on the Letters. The Court is not referring to Plaintiffs' separate breach of contract claim based on the "MARS Negotiated Resolution." R. Doc. 36 at p. 2 (citing R. Doc. 12 at p. 10, ¶¶ 51-53).

[62] R. Doc. 25.

[63] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).

[64] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

[65] *Id.*

[66] *Id.*

[67] *S. Christian Leadership Conf. v. Supreme Court of the State of La.*, 252 F.3d 781, 786 (5th Cir. 2001) (citing *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)).

sufficient.[68]

In summary, "[f]actual allegations must be enough to raise a right to relief above the speculative level."[69] "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief."[70] "Dismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'"[71]

## LAW AND ANALYSIS

### I.   ERISA completely preempts Plaintiffs' state law breach of contract and detrimental reliance claims based on the Letters.

Defendant UHC asks the Court to dismiss Plaintiffs' state law breach of contract and detrimental reliance claims based on the Letters under 29 U.S.C. § 1132(a) or 29 U.S.C. § 1144(a) because the claims are either completely preempted or conflict preempted under ERISA.[72] Both complete and conflict preemption may arise under ERISA.[73] Since the applicability of ERISA to this lawsuit is not in dispute, either of the two paths to ERISA preemption may apply. Because the Court finds Plaintiffs' state law claims based on the Letters are completely preempted, it is not necessary to reach UHC's conflict preemption arguments.

With respect to complete preemption, a state law claim falls within the scope of ERISA and is completely preempted "if [1] an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and . . . [2] there is no other

---

[68] *Iqbal*, 556 U.S. at 663, 678 (citations omitted).
[69] *Twombly*, 550 U.S. at 555.
[70] *Id.* (quoting FED. R. CIV. P. 8(a)(2)).
[71] *Cutrer v. McMillan*, 308 F. App'x 819, 820 (5th Cir. 2009) (per curiam) (unpublished) (quoting *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986)).
[72] R. Doc. 20-1 at pp. 8, 11.
[73] *Ellis v. Liberty Life Assur. Co. of Boston*, 394 F.3d 262, 274–76 (5th Cir. 2004).

independent legal duty that is implicated by a defendant's actions."[74] Said simply, an alleged state law claim is completely preempted by ERISA if "the individual is entitled to such coverage only because of the terms of an ERISA-regulated employee benefit plan, and . . . no legal duty (state or federal) independent of ERISA or the plan terms is violated."[75]

As is the case here, "[w]hether a third-party health care provider's claims are completely preempted by ERISA depends on precisely what rights the provider seeks to enforce and what duty it alleges has been breached."[76] If the claim is asserted "in a derivative capacity pursuant to an assignment of [a] patient's rights," then "[t]hat kind of derivative claim is completely preempted by ERISA."[77]

But "if a health care provider can assert a *right to payment* based on some separate agreement between itself and an ERISA defendant (such as a provider agreement or *an alleged verification of reimbursement prior to providing medical services*), that direct claim [may] not [be] completely preempted by ERISA."[78] In cases involving an insurer's alleged verification of reimbursement to a medical provider, the Fifth Circuit and federal district courts within the Fifth Circuit have recognized a distinction between "rate of payment" and "right to payment" claims.[79] A rate of payment claim is alleged when a provider is disputing only the amount of payment, the basic right to payment has already been established, and the remaining dispute only

---

[74] *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004).
[75] *Id.*
[76] *Ctr. for Restorative Breast Surgery, L.L.C. v. Humana Health Ben. Plan of Louisiana, Inc.*, No. 10-4346, 2011 WL 1103760, at *2 (E.D. La. Mar. 22, 2011) (Fallon, J.) (citing *Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1346–47 (11th Cir. 2009)).
[77] *Id.* (citing *Conn.*, 591 F.3d at 1347).
[78] *Id.* (emphasis added) (citing *Conn.*, 591 F.3d at 1346–47).
[79] *See, e.g., Lone Star OB/GYN Assoc. v. Aetna Health Inc.*, 579 F.3d 525, 532 (5th Cir. 2009); *Anderson v. Ochsner Health Sys.*, 2012 WL 2116173, at *3 (E.D. La. 6/11/2012) (Africk, J.).

involves obligations derived from a source other than the ERISA-governed plan.[80] A right to payment claim, on the other hand, is alleged when the provider is claiming non-payment or underpayment because the insurer denied full payment for "medically necessary" services—a coverage determination usually defined by ERISA plans.[81] Right to payment claims are completely preempted by ERISA,[82] while rate of payment claims may not be.[83] Identifying whether a claim is a right to payment versus rate of payment claim requires judicial discernment.[84] This is because any attempt to characterize claims as eluding the scope of ERISA itself presents a legal rather than a factual conclusion.[85] It is the Court's function to draw legal conclusions from the facts pled.[86] "Merely referring to labels affixed to claims to distinguish between preempted and non-preempted claims is not helpful because doing so would elevate form over substance and allow parties to evade the pre-emptive scope of ERISA."[87]

With these precepts in mind, the Court will now turn to the two elements that must exist for Plaintiffs' state law claims of breach of contract and detrimental reliance to be preempted by ERISA: (1) Plaintiffs must have been able to, at some point in time, bring their state law claims under Section 502(a)(1)(B) of ERISA; and (2) there must be

---

[80] *Lone Star OB/GYN Assoc.*, 579 F.3d at 530-31; *see also Long Island Thoracic Surgery, P.C. v. Building Service 32BJ Health Fund*, 2019 WL 7598669 (E.D. NY 9/3/2019).
[81] *Lone Star OB/GYN Assoc.*, 579 F.3d at 530-31.
[82] This is true if the Plaintiffs have standing to sue under ERISA. If there is no standing, even a right to payment claim will escape complete preemption.
[83] *Lone Star OB/GYN Assoc.*, 579 F.3d at 530-31.
[84] *Gables Ins. Recovery v. United Healthcare Ins. Co.*, 2013 WL 9576688 (S.D. Fla. 8/8/2012).
[85] *Id.*;
[86] *S. Christian Leadership Conf. v. Supreme Court of the State of La.*, 252 F.3d 781, 786 (5th Cir. 2001) (citing *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)).
[87] *De La Pedraja v. UnitedHealthcare of Florida, Inc.*, 2010 WL 11570680 (S.D. Fla. 8/20/2010); *see also Connecticut State Dental Ass'n v. Anthem Health Plans, Inc.*, 2009 WL 5126236 (11th Cir. 2009). The Court finds *Omega Hospital v. Aetna Life Insurance Co.*, an unreported and non-binding case on which Plaintiffs rely in opposition, unpersuasive because, in that case, the district court merely referred to labels affixed to the claims by the plaintiff to distinguish between preempted and non-preempted claims. R. Doc. 25 at p. 10; *see* 2008 WL 4059854 (E.D. La. 8/25/2008) (Africk, J.).

11

no other independent legal duty implicated by UHC's actions."[88]

**A. Plaintiffs' state law breach of contract and detrimental reliance claims based on the Letters could have been brought under § 502(a)(1)(B).**

In determining whether Plaintiffs' state law breach of contract and detrimental reliance claims based on the Letters are completely preempted by ERISA, the Court must first determine whether Plaintiffs could have brought these claims under ERISA § 502(a)(1)(B). In the Fifth Circuit, this first element of the ERISA preemption analysis is concerned with determining whether Plaintiffs have standing to sue under ERISA.[89] Importantly, ERISA does not preempt "[a] state law claim . . . [that] does not affect the relations among the principle ERISA entities (the employer, the plan fiduciaries, the plan, and the beneficiaries)."[90] Admittedly, Plaintiffs in this case do not allege they are participants or beneficiaries of an ERISA plan; thus, they lack independent standing to assert a claim for recovery under ERISA.[91] However, when a participant or beneficiary assigns her right to receive benefits under an ERISA plan to their medical provider, that provider may bring a derivative action to enforce an ERISA plan beneficiary's claim.[92] Plaintiffs allege Patient N.T. executed a document entitled "Assignment of Benefits/Designated Authorized Representative," which assigned "to the fullest extent permitted by law and all benefit and non-benefit rights (including the right to any payments) under" the Policy to Plaintiffs.[93] Thus, accepting Plaintiffs' allegations as

---

[88] *Lone Star OB/GYN Assoc. v. Aetna Health Inc.*, 579 F.3d 525, 529-30 (5th Cir. 2009).
[89] *Id.*; *but see Montefiore Medical Center v. Teamsters Local 272*, 642 F.3d 321 (2d Cir. 2011) (providing that this element involves two inquiries: (1) whether the plaintiff is the type of party that can bring a claim pursuant to § 502(a)(1)(B) and (2) whether the actual claim that plaintiff asserts can be construed as a colorable claim for benefits pursuant to § 502(a)(1)(B)).
[90] *Perkins v. Time Ins. Co.*, 898 F.2d 470, 473 (5th Cir. 1990).
[91] R. Doc. 12.
[92] *Harris Methodist Fort Worth v. Sales Support Servs. Inc. Employee Health Care Plan*, 426 F.3d 330, 333-34 (5th Cir. 2005).
[93] R. Doc. 12 at p. 3, ¶ 10.

true, they have standing to bring a derivative action under ERISA.

In their opposition to UHC's Second Motion to Dismiss, Plaintiffs do not challenge the first prong of the complete preemption analysis under ERISA.[94] During a status conference held on March 30, 2023, "the parties agreed Plaintiffs' state law claims could have been brought under ERISA § 502(a)(1)(B)."[95] In light of the foregoing, the Court finds the first element for ERISA preemption is satisfied in this case. The Court now moves to the more "crucial question . . . [of] whether [Plaintiffs are] in fact seeking benefits under the terms of the plan, or rights that derive from" an independent legal duty.[96]

## B.  No legal independent state law duty is implicated by UHC's actions.

To establish complete preemption, the Court also must find that no independent state law legal duty is implicated by UHC's actions. A claim implicates an independent legal duty when a plaintiff may bring the state law claim *regardless of the terms of an ERISA plan*.[97] If a party is suing "under obligations created by the plan itself, [instead of] under obligations independent of the plan and the plan member," the alleged obligations implicate legal duties that are not entirely independent of ERISA, and thus are subject to complete preemption.[98] Said differently, if UHC's obligation to pay Plaintiffs stems from the ERISA Plan as opposed to another independent obligation, claims arising from the UHC's alleged breach are right to payment claims, not a rate of payment claim independent of the Plan,[99] and are preempted.[100] Rate of payment claims

---

[94] *See* R. Doc. 25.
[95] R. Doc. 36 at p. 2.
[96] *Lone Star OB/GYN Assoc. v. Aetna Health Inc.*, 579 F.3d 525, 529 n.3 (5th Cir. 2009).
[97] *Aetna Health Inc. v. Davila*, 542 U.S. 200, 213 (2004).
[98] *Spring E.R., LLC v. Aetna Life Ins. Co.*, 2010 WL 598748, at *5 (S.D.Tex. Feb. 17, 2010).
[99] *See id.* at 530–31; *Lone Star OB/GYN Assoc. v. Aetna Health Inc.*, 579 F.3d 525, 532 (5th Cir. 2009); *Anderson v. Ochsner Health Sys.*, 2012 WL 2116173, at *3 (E.D. La. 6/11/2012) (Africk, J.); *see also Long*

may not be preempted.[101] For clarity, the Court confirms what other courts have recognized: the rate of payment may still be at issue even when a claim is properly characterized as a right of payment claim. Some courts have characterized this kind of right to payment claim as a sort of "hybrid claim[]—challenging both the rate of payment and the right to payment." Such "hybrid" right of payment claims "still fall within the scope of ERISA under the *Davila* complete preemption analysis,"[102] and are preempted.

In their first amended complaint, Plaintiffs allege they bring their state law breach of contract and detrimental reliance claims in their individual capacities and not under the assignment of benefits from Patient N.T.[103] Plaintiffs allege the Letters (the First Pre-Authorization and Medical Necessity Letter, the Second Pre-Authorization Letter, and the Third Pre-Authorization Letter) constitute a contract, under which UHC agreed (1) the first, second, and third reconstruction procedures were eligible for coverage under the Policy and medically necessary and (2) to pay Plaintiffs the customary and reasonable compensation for the reconstruction procedures.[104] Pointing to these allegations, in opposition to the instant Motion to Dismiss, Plaintiffs argue UHC "breached obligations owed to Plaintiff[s] . . . separate from, and independent of,

---

*Island Thoracic Surgery, P.C. v. Building Service 32BJ Health Fund*, 2019 WL 7598669 (E.D. NY 9/3/2019).

[100] This is true if the Plaintiffs have standing to sue under ERISA. If there is no standing, even a right to payment claim will escape complete preemption.

[101] *Lone Star OB/GYN Assoc.*, 579 F.3d at 530-31.

[102] *La Ley Recovery Sys-OB, Inc. v. UnitedHealthcare Ins. Co.*, 2014 WL 5524389, at *3 (S.D. Fla. 10/31/2014). For ease of reference, the Court will refer to Plaintiffs' state law claims based on Letters as "right of payment" claims even though the rate of payment also seems to be at issue.

[103] R. Doc. 12 at p. 4, ¶ 12. Had they brought their state law claims as the assignee of Patient N.T., the state law claims would also be completely preempted by ERISA. *Hermann Hosp. v. MEBA Medical Benefits Plan*, 845 F.2d 1286, 1290 (5th Cir. 1988).

[104] R. Doc. 13 at p. 13, ¶¶ 67-72.

ERISA,"[105] meaning their claims are, they argue, *only* rate of payment claims. To that end, Plaintiffs also argue "[t]hese claims . . . are not dependent on the specifics of the applicable plan and do not require review of the plan to resolve."[106] Rather, the only issue, according to Plaintiffs, is the rate of payment owed, not whether Plaintiffs have a right to payment.[107]

The district court in *Sadeghi Center for Plastic Surgery, et al. v. Aetna* plainly foreclosed Sadeghi's and TBT's ability to argue the preauthorization letters in that case gave rise to a legal duty independent of the ERISA-governed plans.[108] Because the preauthorization letters were inextricably linked with the ERISA plans, the claims brought to enforce the plans were truly right of payment claims. In that case, a federal district court in the United States District Court for the Middle District of Louisiana held, on summary judgment, that virtually identical breach of contract and detrimental reliance claims brought by the same two plastic surgeons as in the case at bar were completely preempted by ERISA.[109] There, Dr. Sadeghi and Dr. Theunissen brought a lawsuit against Aetna, a plan administrator, for underpayment of benefits related to breast reconstruction surgeries involving multiple surgeons.[110] Dr. Sadeghi and Dr. Theunissen argued the preauthorization letters Aetna sent to them constituted a valid contract for payment of services.[111] The doctors brought Louisiana state law claims of detrimental reliance and breach of contract in their individual capacities and not as

---

[105] R. Doc. 25 at p. 5.

[106] *Id.* at pp. 12-13.

[107] *Id.* at p. 13.

[108] *Sadeghi v. Aetna Life Ins. Co.*, 564 F.Supp.3d 429 (M.D. La. 9/28/2021). It bears mentioning that Plaintiffs' opposition includes no discussion of the *Sadeghi* case, even though the instant Motion to Dismiss is, rightly so, based almost entirely on the holding in that case.

[109] *Id.* at 472. The Court is cognizant that *Sadeghi* was decided at the summary judgment stage, while the case at bar is merely at the motion to dismiss stage of litigation. The Court has looked to Plaintiffs' factual allegations in the first amended complaint, accepted those as true, and finds *Sadeghi* factually analogous.

[110] *Id.* at 433.

[111] *Id.* at 456-57.

assignees of their patients.[112] With respect to the second element for complete preemption under ERISA, *i.e.*, whether there was an independent legal duty implicated by the defendant's actions, the district court held the preauthorization letters "d[id] not constitute a separate contract or agreement" independent of the ERISA benefit plan, meaning no independent separate legal duty was implicated.[113] Accordingly, the district court found the plaintiffs' state law claims were not rate of payment claims, but rather were right to payment claims.[114] To aid in its determination of whether a preauthorization letter implicated an "independent duty" separate from the plan, the district court differentiated between letters that provided a "rate of payment" and letters that "implicate a right to benefits available under the Plans."[115]

According to the district judge, insurer preauthorization letters that promise a specific "rate of payment" could implicate an independent duty separate from the benefits plan; however, letters that "implicate a right to benefits under the Plans" do not, and thus are completely preempted by ERISA.[116] The district court reasoned Aetna's preauthorization letters were "clear that no specific amount of payment for services [was] promised."[117] Instead, the preauthorization letters referenced benefits, and the determination of the benefits required interpretation of the plans.[118] Consistent with other caselaw, the mere fact that partial payment of a claim was sometimes made by Aetna did not transform the preauthorization letters into obligations separate from the

---

[112] *Id.* at 455.
[113] *Id.* at 469.
[114] *Id.* at 472. Again, the rate of payment may still be at issue in the context of a right to payment claim.
[115] *See generally id.*
[116] *Id.* at 469-72.
[117] *Id.* at 469.
[118] *Id.* at 470 (citing *Ambulatory Infusion Therapy Specialists, Inc. v. Aetna*, 2007 WL 320974 (S.D. Tex. 1/30/2007)).

plans.[119] The district court highlighted that the preauthorization letters were not addressed to the medical providers exclusively, which further undermined any claim that the letters were separate contracts between the providers and Aetna.[120] The explicit text of the plans also stated that prior approval was not a guarantee of payment, and payment for services was subject to terms and conditions of the plans.[121] "[T]he promise [in the letters that services were eligible for coverage] was not [a promise] that Plaintiffs would be reimbursed a specified amount for services; rather, it is a representation of when the services would be covered" under the relevant plans.[122] This kind of "'promise' is expressly conditional and necessarily turns on interpretation" of the ERISA plan.[123] Accordingly, the district court found

> the [letters] do not provide a rate of payment; rather they implicate a right to benefits available under the Plans. The [letters] do not simply cross-reference the Plans or overlap with promises set forth therein; rather, the terms of the [letters] depend almost entirely on consultation with and interpretation of the Plans. . . . Therefore, the [court found] Plaintiffs' state law breach of contract and detrimental reliance claims are completely preempted by ERISA.[124]

The Court finds the reasoning of *Sadeghi* to be highly persuasive. Applying that reasoning to the case at bar, as a matter of law, the Letters (the First Pre-Authorization and Medical Necessity Letter, the Second Pre-Authorization Letter, and the Third Pre-Authorization Letter) do not constitute a separate agreement that gives rise to a legal duty outside of ERISA and the Plan. Accordingly, Plaintiffs' state law claims are right to payment claims.[125]

---

[119] *Id.* at
[120] *Id.* at 469.
[121] *Id.* at 470.
[122] *Id.* at 472.
[123] *Id.*
[124] *Id.*
[125] The rate of payment also seems to be at issue. To be sure, some courts have characterized these kinds of

With respect to the Letters, like in *Sadeghi*, the Letters UHC sent: (1) are addressed to Patient N.T., not the medical providers;[126] (2) provide for eligibility *under the Plan*;[127] (3) refer to the Plan when stating the "plan may have limits on . . . services the plan covers;"[128] (4) explicitly provide that they "do[] not guarantee that the plan will pay for the service" because "[p]ayment of covered services depends on other plan rules;"[129] and (5) set out no specific rate of payment, meaning they cannot give rise to a rate of payment claim.[130] It is abundantly clear that the Letters are a reflection of, and not separate from, the Plan; rather, they implicate a right to benefits under the Plan. Pre-authorization letters that merely "implicate a right to benefits available under the Plan[]" do not implicate an independent duty separate from the benefits plan and claims arising from them are completely preempted by ERISA as they are right to payment claims.[131] This is because a rate of payment claim is alleged when a provider is disputing only the amount of payment, the basic right to payment has already been established, and the remaining dispute only involves obligations derived from a source *other than* the ERISA-governed plan.[132] In the context of the Letters, the source of the obligation to pay Sadeghi and TBT, to the extent there is any, is derived entirely from the Plan itself.[133]

Similarly, the Letters state that the insurer looks to the ERISA plan to determine

---

claims as "hybrid claims—challenging both the rate of payment and the right to payment." Such "hybrid" claims "still fall within the scope of ERISA under the *Davilla* complete preemption analysis." *La Ley Recovery Sys-OB, Inc. v. UnitedHealthcare Ins. Co.*, 2014 WL 5524389, at *3 (S.D. Fla. 10/31/2014).
[126] The parties confirmed this during the March 30, 2023 status conference. R. Doc. 36 at p. 2.
[127] R. Doc. 20-5, R. Doc. 20-6, and R. Doc. 20-7.
[128] R. Doc. 20-6 at p. 2; R. Doc. 20-7 at p. 1.
[129] R. Doc. 20-5 at p. 2; R. Doc. 20-6 at p. 2; R. Doc. 20-7 at p. 2.
[130] *See generally* R. Doc. 20-5, R. Doc. 20-6, and R. Doc. 20-7.
[131] *Sadeghi v. Aetna Life Ins. Co.*, 564 F.Supp.3d 429, 472 (M.D. La. 9/28/2021). Again, the first element of complete preemption is met: Plaintiffs have standing to sue under ERISA § 502(a)(1)(B).
[132] *Lone Star OB/GYN Assoc.*, 579 F.3d at 530-31; *see also Long Island Thoracic Surgery, P.C. v. Building Service 32BJ Health Fund*, 2019 WL 7598669 (E.D. NY 9/3/2019).
[133] As in *Sadeghi*, the fact that UHC made partial payment to TBT is not dispositive.

both the scope of any services eligible for reimbursement, and the amount of any subsequent payment.[134] As a result, the alleged breach of contract and detrimental reliance claims based on the Letters require the Court to consult and analyze the Plan to make a determination of benefits. "State law legal duties are not independent of ERISA where 'interpretation of the terms of [the] benefit plan forms an essential part' of the claim, and legal liability can exist only because of [the defendant's] administration of ERISA-regulated benefit plans."[135]

Finally, jurisprudence from other circuits supports the argument that Plaintiffs' state law claims are completely preempted by ERISA for another reason. The United States Court of Appeals for the Second Circuit has held state law claims brought by providers on the basis of pre-authorization communications are completely preempted by ERISA when the "pre-approval process was *expressly required by the terms of the Plan itself* [because the claims are] therefore inextricably intertwined with the interpretation of Plan coverage and benefits."[136] During a status conference with the Court on March 30, 2023, the parties stipulated the Plan required Plaintiffs to seek prior authorization for the reconstruction procedure.[137] Thus, the Letters in this case do not "create a sufficiently *independent* duty."[138]

With respect to the medical necessity component of the First Pre-Authorization and Medical Necessity Letter, courts have recognized a "determination of the medical necessity [, like the medical necessity determination in the case at bar,] of a particular procedure is not the equivalent of a representation that benefits will be paid to cover the

---

[134] *See generally* R. Doc. 20-5, R. Doc. 20-6, and R. Doc. 20-7.
[135] *In re WellPoint, Inc.*, 903 F.Supp.2d 880, 929 (C.D. Cal. 2012) (quoting *Davila*, 542 U.S. at 213).
[136] *Montefiore Medical Center v. Teamsters Local 272*, 642 F.3d 321, 332 (2d Cir. 2011).
[137] R. Doc. 36 at p. 2.
[138] *Montefiore*, 642 F.3d at 332.

cost of that procedure; rather, a medical-necessity determination is but the first step in the process to determine the coverage of a procedure under a patient's insurance plan."[139] In this case, the Plan is clear that a medical necessity determination is but one element in determining whether a particular treatment is eligible for benefits.[140] Accordingly, the First Pre-Authorization and Medical Necessity Letter cannot give rise to a separate legal duty independent of ERISA or the Plan.

In sum, Plaintiffs' breach of contract and detrimental reliance claims based on the Letters are right to payment/benefits claims, not rate of payment claims. The Letters do not create a legal duty independent of the Plan. Plaintiffs seemingly recognize this in their first amended complaint when they allege in the second paragraph that "[t]his case is a claim for benefits due under the Plan, . . . based upon adverse benefits determinations."[141] Thus, the second element for complete preemption is satisfied. Plaintiffs' state law claims of breach of contract and detrimental reliance based on the Letters are completely preempted by ERISA. Pursuant to Rule 12(b)(6), "[a] preempted state law claim fails to state a claim on which relief may be granted because it is not plausible on its face."[142]

---

[139] *Toups v. Moreno Grp.*, 2013 WL 1187102, at *13 (W.D. La. 3/21/2013).

[140] R. Doc. 20-4 at p. 125.

[141] R. Doc. 12 at p. 1, ¶ 2. Plaintiffs argue in opposition that their state law claims are rate of payment claims. R. Doc. 25. Obviously, this argument is inconsistent with the allegation made in the second paragraph of their first amended complaint that "[t]his case is a claim for benefits due under the Plan, . . . based upon adverse benefits determinations." Such an inconsistency is likely barred by the doctrine of judicial estoppel. "The doctrine [of judicial estoppel] prevents internal inconsistency, precludes litigants from 'playing fast and loose' with the courts, and prohibits parties from deliberately changing positions upon the exigencies of the moment." *Gabarick v. Laurin Maritime (America), Inc.*, 2013 WL 12092512, at *2 (E.D. La. 6/12/2013) (Lemelle, J.) (internal quotations omitted). Regardless, as reflected in this Order and Reasons, the Court has ignored alleged labels affixed to Plaintiffs' state law claims and has, instead, independently analyzed whether the state law claims give rise to a rate of payment or right to payment claim.

[142] *Reddick v. Medtronic, Inc.*, 2021 WL 798294 (E.D. La. 3/2/2021) (Morgan, J.) (recognizing that preemption may be properly decided at the 12(b)(6) stage).

**II.     The Court will grant Plaintiffs further leave only to amend their complaint to assert the preempted state law claims as federal claims.**

With respect to the preempted state law claims, to grant Plaintiffs another opportunity to amend their complaint would be futile because there is no other way to plead around the bar of preemption. Accordingly, the dismissal of Plaintiffs' state law claims is with prejudice.

Be that as it may, Plaintiffs may wish to re-assert their preempted state law claims as properly asserted federal claims. The Fifth Circuit has not clearly indicated "the appropriate course of action for claims found to be completely preempted" but that a plaintiff wishes to re-assert as federal claims, though it has outlined two possible approaches:

> District courts in this circuit are split. Most hold that complete preemption results in dismissal of the state-law claim, even though they typically allow plaintiffs to replead and assert the dismissed state law claims as federal claims. . . . But at least one of our district courts does not dismiss the claim, instead treating it as having become a properly asserted federal claim and proceeding to adjudicate it on the merits.[143]

The Court adopts the majority approach, will dismiss the completely preempted state law claims, *i.e.*, the breach of contract claim and detrimental reliance claim based on the Letters, but will allow Plaintiffs to replead and assert the dismissed state law claims as federal claims. It bears mentioning that, in the case at bar, Plaintiffs already bring a federal ERISA claim stemming from the same operative facts,[144] meaning there is no apparent need to grant Plaintiff's leave to "replead and assert the dismissed state law claims as federal claims."[145] Nevertheless, in the form of a properly filed motion, Plaintiffs may bring to the Court's attention their wish to replead and assert the

---

[143] *Spear Mktg., Inc. v. BancorpSouth Bank*, 791 F.3d 586, 598 n.62 (5th Cir. 2015) (cleaned up) (collecting cases).
[144] Plaintiffs' ERISA claim is stayed. R. Doc. 17 at p. 2.
[145] *Spear Mktg., Inc.*, 791 F.3d at 598 n.62.

dismissed state law claims as federal claims within 7 days of this Court's Order and Reasons.

<u>**CONCLUSION**</u>

For the foregoing reasons;

**IT IS ORDERED** that UHC's Second Motion to Dismiss[146] is **GRANTED**, and Plaintiffs' Louisiana law breach of contract and detrimental reliance claims based on the Letters are hereby **DISMISSED WITH PREJUDICE**. Plaintiffs' state law breach of contract claim on the basis of the "MARS Negotiated Resolution"[147] and stayed ERISA claim[148] will remain.

**IT IS FURTHER ORDERED** that, in the form of a properly filed motion, Plaintiffs may bring to the Court's attention their wish to replead and assert the dismissed state law claims as federal claims within **7 days** of today's date.[149]

**New Orleans, Louisiana, this 12th day of April, 2023.**

_Susie Morgan_
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[146] R. Doc. 20.
[147] R. Doc. 36.
[148] R. Doc. 17.
[149] Plaintiffs shall indicate in their motion whether UHC objects to such a request. If UHC does object, Plaintiffs shall set their motion for submission on an appropriate submission date.